UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,

v.  CASE NO. 5:24-CR-00430-JKP

JEROME LEE JAMES, III

## ORDER DENYING MOTION TO DISMISS INDICTMENT

Before the Court is Defendant Jerome Lee James' First Amended Motion to Dismiss 18 U.S.C. § 922(g)(1) Indictment pursuant to Federal Rule of Criminal Procedure 12. *ECF No. 37*. The Government filed a Response, (*ECF No. 41*),[1] attaching fourteen exhibits in support. *See id*. In the First Amended Motion to Dismiss, Defendant argues the Court should dismiss the indictment because § 922(g)(1) is unconstitutional, both facially and as applied to him, under the Second Amendment standard articulated by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). *ECF No. 37*. Defendant also argues § 922(g)(1) violates the Commerce Clause. *Id*. Defendant recognizes his Second Amendment facial challenge, as well as his Commerce Clause challenge, are foreclosed by Fifth Circuit precedent. *E.g., United States v. Alcantar*, 733 F.3d 143 (5th Cir. 2013); *United States v. Diaz*, 116 F. 4th 458 (5th Cir. 2024). On June 26, 2025, the Court held a hearing on the First Amended Motion to Dismiss and another motion. *See* Min. Ent. June 26, 2025. At the hearing, the parties agreed the Court could resolve the First Amended Motion to Dismiss on the briefs. Upon review of the briefs, and for the reasons discussed herein. the Court **DENIES** Defendant's First Amended Motion to Dismiss.

---

[1] Defendant filed his initial Motion to Dismiss Indictment on March 10, 2025. *ECF No. 33*. Before the Government's response deadline, however, Defendant filed his First Amended Motion to Dismiss 18 U.S.C. § 922(g)(1) Indictment on March 17, 2025. *ECF No. 37*. Accordingly, the Government filed its Response to the First Amended Motion to Dismiss 18 U.S.C. § 922(g)(1) Indictment on April 10, 2025. *ECF No. 41*.

1

## BACKGROUND

On August 15, 2024, Detective Tim Crawford of the New Braunfels Police Department ("Det. Crawford") observed Defendant roll through a stop sign and enter a crosswalk in violation of Tex. Trans. Code § 544.010.[2] *ECF No. 41 at 2*. Det. Crawford also observed Defendant using his cell phone while operating a vehicle in violation of Tex. Trans. Code § 545.4521(b).[3] *Id*. Det. Crawford's encounter with Defendant resulted in a search of Defendant's vehicle. *Id*. During the search, Det. Crawford found a .40 caliber pistol in the center console. *Id*.

On September 4, 2024, a grand jury returned an indictment against Defendant for violating the federal felon in possession statute,18 U.S.C. § 922(g)(1). *ECF No. 13*. Defendant has two prior felony convictions: (1) a 2009 conviction for knowingly using and carrying a firearm during a drug trafficking crime, (*see* Government's Exhibit 3); and (2) a 2014 conviction for violating the federal felon in possession of a firearm statute, (*see* Government's Exhibit 6).

Because Defendant concedes his facial and Commerce Clause challenges are foreclosed by Fifth Circuit precedent, the Court will only examine Defendant's Second Amendment as applied challenge. *See ECF No. 37 at 1*.

---

[2] Tex. Trans. Code § 544.010 provides:

  (a) Unless directed to proceed by a police officer or traffic-control signal, the operator of a vehicle or streetcar approaching an intersection with a stop sign shall stop as provided by Subsection (c).

  (b) If safety requires, the operator of a vehicle approaching a yield sign shall stop as provided by Subsection (c).

  (c) An operator required to stop by this section shall stop at a clearly marked stop line. In the absence of a clearly marked stop line, the operator shall stop before entering the crosswalk on the near side of the intersection. In the absence of a clearly marked stop line or crosswalk, the operator shall stop at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway.

[3] Tex. Transp. Code Ann. § 545.4251(b) provides: "An operator commits an offense if the operator uses a portable wireless communication device to read, write, or send an electronic message while operating a motor vehicle unless the vehicle is stopped. To be prosecuted, the behavior must be committed in the presence of or within the view of a peace officer or established by other evidence."

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 12 provides "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* Fed. R. Crim. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also, United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.

**ANALYSIS**

Defendant argues 18 U.S.C. § 922(g)(1) ("§ 922(g)(1)") is unconstitutional under the Second Amendment as applied to him because "the government cannot show a Founding era tradition of disarming individuals with criminal histories like Defendant's." *ECF No. 37 at 5–6*. Defendant further argues "even if the government shows such a tradition under [*United States v. Diaz*'s] as-applied analysis, that is wrong." *Id. at 9–11* (citing *United States v. Diaz*, 116 F. 4th 458 (5th Cir. 2024)). The Fifth Circuit's opinion in *United States v. Diaz* is directly on point regarding the approach district courts should take to resolve Second Amended as applied challenges, however, and supports denial of Defendant's as applied challenge to § 922(g)(1) in this case. 116 F. 4th 458 (5th Cir. 2024).

According to *Diaz*, the plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1). *Id*. at 467. Therefore, the burden shifts to the government to "demonstrate that regulating [Defendant's] possession of the firearm is consistent with the Nation's historical tradition of firearm regulation." *Id*. To meet its burden, "the government must identify a well-established and representative historical analogue, not a historical twin." *Id*. "Evidence must be relevantly similar to the challenged law." *Id*.

In this case, the Government points to (1) "[h]istorical laws severely punishing the possession of illicitly obtained goods;" and (2) historical laws "disarming those who present a special danger of misusing firearms." *See ECF No. 41 at ¶¶ 26–45*. The Court notes it will not rely on the Government's arguments regarding a tradition of punishing individuals for trafficking illicit or stolen goods, and punishment for counterfeiting and forgery of public securities. *Id. at ¶¶ 26–29*; *see United States v. Kimble*, No. 23-50874, 2025 WL1793832 at *5 (5th Cir. June 30, 2025). However, the Government's arguments regarding the Nation's tradition of disarming individuals whose conduct reflects that they are a danger to the public and physical safety of others are well taken. *See ECF No. 41, ¶¶ 30–52*.

In assessing predicate offenses under § 922(g)(1), a court "may consider prior convictions that are 'punishable by imprisonment for a term exceeding one year.'" *Diaz*, 116 F. 4th at 467. Here, on January 22, 2009, Chief Judge Joseph R. Goodwin of the Southern District of West Virginia sentenced Defendant to sixty months for violating 18 U.S.C. § 924(c), which proscribes knowingly using and carrying a firearm during a drug trafficking crime. *See* Government's Ex. 3. Defendant committed this offense by carrying a loaded firearm in connection with his possession of 1.26 grams of cocaine base. *See* Government's Ex. 3 at 2; *see also* Government's Ex. 5 at 7. Defendant admitted he intended to distribute the cocaine. *See* Government's Ex. 3 at 2.

4

A.      **Defendant's As Applied Challenge to 18 U.S.C. § 922(g)(1)**

To survive Defendant's as applied challenge, "the government must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [Defendant's]." *Diaz*. 116 F.4th at 467.

The Court will analyze Defendant's use or carrying of a firearm during a drug trafficking conviction because it is dispositive of the pending legal issue. First, it is critically important to note Defendant's underlying felony conviction or predicate offense was not for simple drug possession. Defendant was involved in the distribution of a dangerous substance (cocaine base) and used or carried a firearm as a means to achieve this end.[4] The Court also acknowledges a number of district courts within the Fifth Circuit have rejected as applied challenges to 922(g)(1) in which Defendants' predicate offenses involved the sale, intent to deliver, or distribution of controlled substances. *See, e.g., United States v. Barfield*, No. 2:24-CR-00007-01, 2024 WL 4859094, at *1 (W.D. La. Nov. 21, 2024); *United States v. Robinson*, No. CR 22-253, 2024 WL 4827375, at *6 (E.D. La. Nov. 19, 2024); *United States v. Hendrickson*, No. 3:23-CR-00418-E, 2024 WL 5113495, at *5 (N.D. Tex. Dec. 13, 2024); *United States v. Carter*, No. CR 23-22, 2024 WL 4723236, at *2 (E.D. La. Nov. 8, 2024); *United States v. Mack*, No. 3:24-CR-00244, 2025 WL 221808, at *1 n.2 (W.D. La. Jan. 16, 2025); and *United States v. Patino*, No. 24-CR-00060, 2024 WL 5010146, *5 (W.D. Tex. Nov. 26, 2024), *but see, e.g., United States v. Luna*, No. 2:23-CR-00518, 2025 WL 760044 (S.D. Tex. February 10, 2025); and *United States v. Gomez*, 2025 WL 971337, *3, Crim A. No. 24-073 (N.D. Texas, Lubbock Div. March 25, 2025) (same).

---

[4] *See* 5th Cir. Pattern Jury Instructions (Criminal Cases) § 2.44A (2024 ed.); *See also* Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina 186–191 (2024 Online Edition) ("Many federal circuits have pattern jury instructions formulated by committees of judges and practitioners and approved by the circuit for use in criminal cases. The Fourth Circuit does not. Thus, the purpose of this work, Pattern Criminal Instructions for Federal Criminal Cases, District of South Carolina, is to fill that void by publishing pattern instructions annotated primarily by reference to Fourth Circuit and Supreme Court cases. Authority from other circuits is referenced only when there is no Fourth Circuit or Supreme Court authority on point.")

The prohibition of the sale of illegal drugs is a relatively modern criminal offense and there is no direct historical analogue. *United States v. Reichenbach*, No. 4:22-CR-00057, 2023 WL 5916467, at *6 (M.D. Pa. Sept. 11, 2023) (citing *United States v. Alaniz*, 69 F.4th 1124, 1129 (9th Cir. 2023)). The lack of a historical twin is not dispositive because "[m]odern regulations that were unimaginable at the Founding need only be 'relevantly similar' to [a historical analogue]." *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) (quoting *Bruen*, 597 U.S. at 26), *cert. granted, judgment vacated sub nom. Garland v. Range*, 144 S. Ct. 2706, 219 L. Ed. 2d 1313 (2024). The Supreme Court has stated that "drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993).

The Fifth Circuit in *Diaz* addressed *Bruen's* two central considerations of the "why" and "how" of § 922(g)(1). *Diaz*. 116 F.4th at 469. Regarding the "why," the court found capital punishment in colonial America addressed three main interests: (1) deterrence; (2) retribution; and (3) penitence. *Id*. at 469. The court further found "[t]he precursor to § 922(g)(1), in turn, was 'enacted to bar possession of a firearm from persons whose prior behaviors have established their violent tendencies.'" *Id*. As to the "how," these laws permanently punished individuals just as § 922(g)(1) does. *Id*. The court also noted the majority of estate forfeiture laws did not allow offenders to regain their property. *Id*. The court reasoned "if capital punishment was permissible to respond to theft, then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Id*.

The Court notes the Government is not required to point to a historical twin, but "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 681 (2024). To this end, a court must ascertain whether the new law is "relevantly similar" to laws that

6

our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern circumstances." *Id*. (citing *Bruen*, 597 U.S. at 29 n.7). "[W]hen a challenged regulation does not precisely match its historical precursors, "it still may be analogous enough to pass constitutional muster." *Id*. The law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin." *Id*.

In *United States v. Hendrickson*, No. 3:23-CR-00418, 2024 WL 5113495, at *5 (N.D. Tex. Dec. 13, 2024), a district court in Texas found § 922(g)(1) constitutional against a defendant's as applied challenge where the defendant's predicate offenses involved drugs and guns. The district judge in *Hendrickson* stated, "[t]he Court concludes from Hendrickson's record of predicate offenses that he represents a credible threat to the physical safety of another, and § 922(g)(1) is not unconstitutional as applied to him." *Id*. The *Hendrickson* court cited to *United States v. Patino*, 758 F.Supp.3d 664 (2024), to support its ruling regarding the constitutionality of § 922(g)(1) in the face of an as applied challenge. The Court agrees with the reasoning of the judges in *Hendrickson* and *Patino* regarding disarming individuals, like Defendant, whose criminal histories involve convictions for serious drug offenses which are associated with violent behavior. Thus, here, "[p]ermanently disarming [Defendant] is . . . merited based on America's longstanding tradition of disarming those who have been convicted of serious crimes suggesting they may pose a risk of violence or other danger to public safety." *Patino*, 758 F. Supp. 3d at 672.

Particularly relevant here, on June 30, 2025, the Fifth Circuit issued a published opinion in *United States v. Kimble*, No. 23-50874, 2025 WL1793832 (5th Cir. June 30, 2025). In that case, the Fifth Circuit rejected an as applied challenge to § 922(g)(1), finding "Kimble's predicate convictions for drug trafficking convey that he belongs to a class of dangerous felons that our regulatory tradition permits legislatures to disarm." *Id*. at *9.

7

The Fifth Circuit explained "[t]he novel question raised by Kimble's appeal is whether a predicate drug-trafficking felony also justifies permanent disarmament under [§922](g)(1) even after the defendant has served his full sentence." *Id*. at *3. The government argued Kimble could be permanently disarmed because "drug trafficking is an intrinsically dangerous felony, and legislatures can disarm those who pose a threat to the safety of others." *Id*. Ultimately, the Fifth Circuit agreed stating "[w]e accept that approach and hold that (g)(1) is constitutional as applied to defendants with predicate felonies for drug-trafficking offenses because of the intrinsic violence of the drug trade . . . The Second Amendment allows Congress to disarm classes of people it reasonably deems dangerous, and § 922(g)(1)'s prohibition on gun possession by individuals convicted of drug-trafficking felonies enacts such a disarmament regime consistent with *Bruen*'s "why" and "how" test." *Id*. at *6. In emphasizing the narrow scope of its decision, however, the Fifth Circuit added:

> Kimble's conviction accords with the Second Amendment because Congress can categorically disarm individuals convicted of violent felonies like drug trafficking. That conclusion does not depend on an individualized assessment that Kimble is dangerous. We thus do not embrace the view that courts should "look beyond" a defendant's predicate conviction "and assess whether the felon's history or characteristics make him likely to misuse firearms." *Contra Pitsilides v. Barr*, 128 F.4th 203, 211–12 (3d Cir. 2025) (quotation omitted). The relevant consideration is a defendant's "prior convictions that are punishable by imprisonment for a term exceeding one year," not unproven conduct charged contemporaneously with a defendant's (g)(1) indictment or prior conduct that did not result in a felony conviction.

*Id*. at *8. Here, the connection between the trafficking of drugs, use of a firearm, and dangerousness are unmistakably clear. Chief Judge Joseph R. Goodwin's Judgment reflects Defendant pleaded guilty to violating 18 U.S.C. § 924(c), which proscribes knowingly using and carrying a firearm during a drug trafficking crime. *See* Government's Ex. 3. Defendant committed this offense by carrying a loaded firearm in connection with his possession of 1.26 grams of

8

cocaine base. *See* Government's Ex. 3 at 2; *see also* Government's Ex. 5 at 7. Defendant admitted he intended to distribute the cocaine. *See* Government's Ex. 3 at 2. Therefore, the Court finds Defendant admitted to using or carrying a firearm in connection with dealing illegal drugs.

Although a precise historical analogue for knowingly using and carrying a firearm in furtherance of a drug trafficking crime does not exist, one of the principles underlying the Second Amendment is to prevent or disarm individuals who have proven they represent a credible threat to the physical safety of another. Defendant's using or carrying of a firearm for the specific purpose of distributing crack cocaine represents the kind of credible threat to physical safety that allows the government to disarm him. Therefore, the Court finds § 922(g)(1) is constitutional as applied to individuals, like Defendant, who have an underlying felony conviction or predicate offense under § 924(c) for using or carrying a firearm in furtherance of a drug trafficking crime.

### B. Defendant's Facial Challenge

Defendant also brings a facial challenge to § 922(g)(1). As the *Diaz* Court recognized, in a facial challenge, "the challenger must establish that no set of circumstances exists under which the statute would be valid." *Diaz*, 116 F.4th at 471-472 citing *United States v. Salerno*, 481 U.S. 739, 745 (1987). Because § 922(g)(1) is constitutional as applied to the facts of his own case, Defendant's facial challenge fails. *Id*. citing *United States v. Rahimi*, 602 U.S. 693 (2024).

### C. Defendant's Commerce Clause Challenge

Turning to Defendant's remaining challenge, Fifth Circuit precedent forecloses Defendant's Commerce Clause argument. The Fifth Circuit has consistently rejected Commerce Clause arguments to § 922(g)(1). *E.g., Alcantar*, 733 F.3d at 145; *United States v. Nichols*, 2022 WL 5401942, at *1 (5th Cir. Oct. 6, 2022) (per curiam), *cert. denied*, 143 S. Ct. 827 (2023). As such, Defendant's Commerce Clause argument fails and his motion in this regard is denied.

## CONCLUSION

The Court finds § 922(g)(1) is constitutional under the Second Amendment, under the standard articulated in the Supreme Court's *Bruen* decision, both facially and as applied to Defendant. Defendant's Commerce Clause is foreclosed by binding precedent. Therefore, Defendant's challenges to § 922(g)(1) are **DENIED**.

It is so ORDERED.

SIGNED this 2nd day of July, 2025.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE