UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,

v.                                                      CASE NO. 5:24-CR-00430-JKP

JEROME LEE JAMES, III

ORDER DENYING AMENDED MOTION TO SUPPRESS

Before the Court is Defendant Jerome Lee James' Amended Motion to Suppress Evidence and Statements, (*ECF No. 38*), to which the Government responded (*ECF No. 42*). On June 26, 2025, the Court held a hearing on the Amended Motion Suppress Evidence and Statements and another motion. *See* Min. Ent. June 26, 2025. For the reasons discussed herein, the Court **DENIES** Defendant's Amended Motion to Suppress Evidence and Statements, (*ECF No. 38*).

BACKGROUND

On August 15, 2024, Detective Tim Crawford of the New Braunfels Police Department ("Det. Crawford") observed Defendant roll through a stop sign and enter a crosswalk in violation of Tex. Trans. Code § 544.010.[1] *ECF No. 41 at 2*. Det. Crawford also observed Defendant using

---

[1] Tex. Trans. Code § 544.010 provides:

(a) Unless directed to proceed by a police officer or traffic-control signal, the operator of a vehicle or streetcar approaching an intersection with a stop sign shall stop as provided by Subsection (c).

(b) If safety requires, the operator of a vehicle approaching a yield sign shall stop as provided by Subsection (c).

(c) An operator required to stop by this section shall stop at a clearly marked stop line. In the absence of a clearly marked stop line, the operator shall stop before entering the crosswalk on the near side of the intersection. In the absence of a clearly marked stop line or crosswalk, the operator shall stop at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway.

his cell phone while operating a vehicle in violation of Tex. Trans. Code § 545.4521(b).[2] *Id*. Det. Crawford's encounter with Defendant resulted in a search of Defendant's vehicle. *Id*. During the search, Det. Crawford found a .40 caliber pistol in the center console. *Id*.

Det. Crawford's dashcam video footage captured Defendant's Transportation Code violations. Gov't. Ex. 1 at 19:23:52. Det. Crawford made a U-turn and attempted to locate the vehicle in a nearby neighborhood. *Id*. at 19:24:24. Det. Crawford was able to locate the vehicle and observed the driver walking towards the car. *Id*. at 19:24:41.

Det. Crawford's bodycam footage captured his encounter with Defendant. Gov't. Ex. 2. Det. Crawford asked Defendant for his license and Defendant responded he did not have his license on his person. Gov't. Ex. 2 at 19:25:33. Defendant explained he was sweating because the vehicle's air conditioning system was not functioning and that he changed the driver's side front tire with the minor that was in the car shortly before he encountered Det. Crawford. *Id*. at 19:25:34–19:26:05. Defendant opened the rear passenger door to show Det. Crawford the tools he used to change the tire. *Id*. at 19:26:05–19:26:10.

Det. Crawford asked Defendant about his presence near a fence and Defendant stated he was not engaged in any activity near the fence. *Id*. at 19:26:17–19:26:30. Det. Crawford conducted a pat down search to ensure Defendant did not have any weapons. *Id*. at 19:26:41–19:28:52. He also asked Defendant for his driver's license number, but Defendant was unable to provide that information. *Id*. Det. Crawford decided to verify Defendant's identity using his name and date of birth. *Id*. Defendant volunteered information regarding a prior encounter he had

---

[2] Tex. Transp. Code Ann. § 545.4251(b) provides: "An operator commits an offense if the operator uses a portable wireless communication device to read, write, or send an electronic message while operating a motor vehicle unless the vehicle is stopped. To be prosecuted, the behavior must be committed in the presence of or within the view of a peace officer or established by other evidence."

with the New Braunfels Police Department. *Id*. Det. Crawford remembered Defendant had marijuana in the vehicle he was driving during the prior encounter. *Id*. at 19:30:00–19:30:30.

Det. Crawford asked Defendant again about his presence near the fence when Det. Crawford first encountered Defendant. *Id*. at 19:29:08. Det. Crawford asked Defendant for consent to search the vehicle because (1) Defendant sped away and darted into the neighborhood when Defendant saw him and (2) to determine whether Defendant may have disposed of any contraband based on his presence at the fence when Det. Crawford first saw him. *Id*. at 19:30:27–19:30:40. Det. Crawford placed a call for a drug-detecting dog or K-9 to sniff the exterior of the vehicle Defendant was driving. *Id*. at 19:31:43–19:31:46.

Defendant informed Det. Crawford he had served time in a federal prison for a drug-related offense while they were waiting for the K-9 unit to arrive. *Id*. at 19:37:45–19:38:00. The K-9 unit arrived at 19:39:14. *Id*. Det. Crawford informed the K-9 unit officer, Officer Jeff Simmons, that he observed Defendant commit traffic violations, dart into the neighborhood, and walking near a fence back toward the vehicle he was driving. *Id*. at 19:39:30–19:40:35. He further explained his prior contact with Defendant involved drugs and Defendant served a prison sentence for drugs. *Id*. The drug-detecting dog was deployed and provided a positive alert for drugs. Gov't Ex. 3 at approximately 19:42:57.

Det. Crawford then searched the vehicle and found a pistol in the center console and a crystal-like substance in a bag in the back seat of the vehicle. Gov't. Ex. 2 at 19:46:24 (the pistol) and 19:48:42 (the suspected illegal substance). During the search, Defendant informed Officer Gonzales he was "trying to figure out if [his girlfriend's] gun was in the car." Gov't. Ex. 4 at 19:45:22-19:45:40. Det. Crawford believed the crystal-like substance was methamphetamine, but testing confirmed the substance was not methamphetamine. Officers

attempted to place Defendant in handcuffs, but he resisted, and a struggle ensued. *Id*. at

19:49:02-20:00:05. Officers were ultimately able to restrain Defendant.

For context, Det. Crawford's bodycam video begins recording at 19:24:47[3] (7:24:47

p.m.) and the request for K-9 assistance was made at 19:31:43 (7:31:43 p.m.). Therefore, Det.

Crawford requested K-9 services approximately seven minutes after he encountered Defendant.

The K-9 unit arrived at 19:39:14 (7:39:14 p.m.) and the dog's alert occurred at approximately

19:42:57 (7:42:57 p.m.). This portion of the interaction between Defendant and Det. Crawford

lasted approximately eighteen to twenty minutes.

I.    **Detective Crawford's Testimony Regarding the Request for K9 Services**

The core issue raised in Defendant's Amended Motion to Suppress Evidence and

Statements, (*ECF No. 38*), is whether Det. Crawford had reasonable suspicion to continue

Defendant's detention to request a K-9 air sniff.

 Prior to Det. Crawford taking the stand, the Court admitted all evidence submitted by

the parties for the hearing to resolve Defendant's Amended Motion to Suppress Evidence and

Statements, (*ECF No. 38*). Hrg. Transcript at 2:19-3:7. As stated above, Defendant does not

challenge the basis the stop or his initial detention but contends Det. Crawford violated his

Fourth Amendment rights by unconstitutionally prolonging his detention to call for K-9 services.

*Id*. at 3:13–25.

Det. Crawford has been employed by the New Braunfels Police Department ("NBPD")

for six years and worked for the Bexar County Sheriff's Office for two years prior to his

employment with NBPD. *Id*. at 4:11–18. He is currently a narcotics officer and received his

initial training certification at San Antonio College. *Id*. at 4:20–5:8. He received additional

---

[3] Det. Crawford testified, and the timestamp on his dashcam reflects, that he turned onto Alves Lane at 19:23:31.
Hrg. Transp. at 12:1–9.

training regarding narcotics investigations and another 200 hours of criminal interdiction training. *Id.* In 2024, Det. Crawford was assigned to the Street Crimes Unit, which focuses on high crime areas, gangs, and narcotics. *Id.* at 5:17–24.

On August 15, 2024, Det. Crawford patrolled State Highway 46 South because it is a high crime area known for gangs and narcotics. *Id.* at 6:2–8. Det. Crawford turned onto Alves Lane and headed towards Hueco Drive to investigate activity at a known drug house. *Id.* at 11–14. As Det. Crawford drove on Alves Lane, he observed a silver passenger car approaching the intersection of Floating Star and Alves Lane. *Id.* at 8:12–16. The car's front two windows were rolled down and the back windows were partially rolled down. *Id.* at 20–24. The driver had a cellular phone in his right hand and pressed to face. *Id.* The driver violated a New Braunfels city ordinance governing hands-free use of cellular phones while driving. *Id.* at 8:25–9:3. Det. Crawford saw that the driver noticed him and put his phone down and sunk into his seat behind the "B pillar." *Id.* 6–9. The "B pillar" of a four-door vehicle is where the front driver side door and the rear driver side door meets—the outer frame of a vehicle which normally covers the front driver side seatbelt. *Id.* at 9:24–10:3. In Det. Crawford's experience, drivers sink down to conceal themselves when they are or have been involved in criminal activity. *Id.* at 10:6–13. Det. Crawford calls this "ghost driving," and found it suspicious. *Id.* He also observed the driver did not stop at the designated point when approaching a stop sign. *Id.* at 14–22.

After observing the referenced traffic violations, Det. Crawford made a U-turn on Alves Lane. *Id.* at 13:18–23. Det. Crawford monitored the car in his rearview mirror and saw it cross Alves Lane and enter Brown Rock Drive. *Id.* Det. Crawford described this driver behavior as a "heat check," which occurs when a driver drives erratically to determine if they are being followed by law enforcement. *Id.* at 15:10–16. In his experience, Det. Crawford has observed

drivers pull into random residences, hotels, and gas stations to avoid police contact. *Id*. Det. Crawford knew Brown Rock Drive had one way in and one way out of the small residential area. *Id*. at 20–25. As he entered Brown Rock Drive, Det. Crawford did not see the car directly in front of him and made a right turn. As he rounded the corner, he saw the driver (the Defendant in this case) walking back to his car. *Id*. The driver's car was parked on the left side of the street facing traffic, which is a traffic violation. *Id*. at 16:1–6.

Det. Crawford stated Defendant's acts of exiting the vehicle and returning to the vehicle from the backyard fence was not consistent with individuals he encounters after making a traffic stop. *Id*. at 16:12–17:6. Based on Det. Crawford's experience, Defendant's actions were consistent with someone involved in criminal activity other than a traffic infraction who is trying to create distance from the vehicle or discard contraband. *Id*. at 17:2–7.

Upon contact, Det. Crawford informed Defendant he stopped him for using his phone and failing to stop at the stop sign, and Defendant acknowledged the violations. *Id*. at 13–17. Defendant told Det. Crawford he was headed to the store to get his stepson a soda, but Det. Crawford testified there are no stores in the Black Rock neighborhood. *Id*. at 18:12–15. Defendant would have had to turn left or right on Alves Lane to travel to a grocery or convenience store for a soda. *Id*. at 16–21. Det. Crawford found Defendant's comment about purchasing a soda suspicious because Defendant drove into the Black Rock neighborhood instead of turning left or right on Alves Lane. *Id*. at 18:25–19:1. Det. Crawford asked Defendant why he drove into the Black Rock neighborhood, and Defendant stated he knew Det. Crawford was coming. *Id*. at 19:5–9. This conformed Det. Crawford's suspicion that Defendant's driving conduct was a "heat check." *Id*.

Det. Crawford immediately began to question Defendant about his presence near a backyard fence in the Black Rock neighborhood. *Id*. at 14–18. The following testimony describes Det. Crawford's interaction with Defendant concerning his presence near the fence.

> Q. So you had asked him why he was over by the fence, you don't need to repeat it verbatim, but what did you based on your training and experience, what did his answer convey to you?
>
> A. I was just curious on why he was in that general area, why he decided to exit his vehicle, walk to a corner of two houses and then observe me walk back. I had asked him initially and he explained he was just trying to see what to do, which is an odd response. You usually have a reason of being in locations whenever you're being asked, and not having a response that's suspicious to me.
>
> Q. And so why did you ask him if he knew anyone on that property?
>
> A. Just based on my training and experience, when I observe individuals that are conducting this behavior, they're typically trying to get rid of contraband. I had asked him if he knew anybody at this residence which he had said no, and then I asked about the secondary residence and he also said no, that he did not know anybody in that vicinity.
>
> Q. So based on your training and experience, did that add to your suspicion, dispel your suspicion?
>
> A. It added to it because he had no nexus of being in that location.

*Id*. at 21:25–22:25.

Det. Crawford described Defendant's behavior as "weird." *Id*. at 23:3–6. Ultimately, Det. Crawford asked Defendant for consent to search the car and Defendant declined the request. *Id*. at 24:3–12. Det. Crawford testified he planned to search the backyards that Defendant was near when he first saw and contacted Defendant. *Id*. at 24:20–25:13. Det. Crawford examined the car, but did not observe any contraband in plain view. *Id*. at 25:16–21. Det. Crawford decided to call for K-9 at 19:31:51. *Id*. at 26:1–5.

As explained above, Defendant alleges Det. Crawford unlawfully extended the traffic stop without additional reasonable suspicion in violation of *Rodriguez v. United States*, 575 U.S. 348 (2015).

## LEGAL STANDARDS AND ANALYSIS

### I.    The Fourth Amendment and Extension of Traffic Stops

The Fourth Amendment's protection against "unreasonable searches and seizures," *see* U.S. CONST. amend. IV, "extends to vehicle stops and temporary detainment of a vehicle's occupants," *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013). Evidence derived from an unreasonable search or seizure generally must be suppressed under the "fruit-of-the-poisonous-tree doctrine." *United States v. Alvarado-Zara*, 782 F.3d 246, 249 (5th Cir. 2015)

Relevant here, the Court analyzes the constitutionality of a traffic stop under the two-step test from *Terry v. Ohio*, 392 U.S. 1 (1968). *See id.* First, "[the Court must] determine whether the stop was justified at its inception." *Id.* If it was, "[the Court must] determine whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *Id.* (internal quotation marks and citation omitted).

In general, traffic stops must "last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *United States v. Brigham*, 382 F.3d 500, 507(5th Cir. 2004). Police officers conducting traffic stops may lawfully examine a person's driver's license and determine whether the vehicle is insured, ask about the purpose and itinerary of the trip, and examine computer databases for outstanding warrants. *Brigham*, 382 F.3d at 507–08. "If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, [however], he may further detain [the car's] occupants for a reasonable time while

appropriately attempting to dispel this reasonable suspicion." *United States v. Pack*, 612 F.3d 341, 350 (5th Cir.), *opinion modified on other grounds on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010).

"[S]uspicion is reasonable if it is based on specific and articulable facts and the rational inferences that can be drawn therefrom." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). To determine whether the officer had a reasonable suspicion, the Court "must examine . . . the totality of the circumstances known to the [officer] when [he] made the investigatory stop and [his] experience in evaluating such circumstances." *Guerrero-Barajas*, 240 F.3d at 433. Courts "give due weight to the officer's factual inferences because officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Smith*, 952 F.3d 642, 648 (5th Cir. 2020) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "Although a mere 'hunch' does not create reasonable suspicion [ ] . . . the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (internal quotation marks and citations omitted).

Det. Crawford faced a fluid situation when encountering Defendant after observing his traffic violations. Because Det. Crawford observed Defendant near the fence when he first saw him, the investigation into the traffic violations and the suspected drugs occurred simultaneously.[4] Upon encountering Defendant, Det. Crawford saw Defendant had exited his vehicle and was walking away from a fence back to the vehicle. From the beginning, Det.

---

[4] *See Rodriguez v. United States*, 575 U.S. 348, 357 (2015) (noting that the "critical question" for constitutional analysis is "whether conducting the sniff 'prolongs'—i.e., adds time to—'the stop').

Crawford was concerned about Defendant's presence near the fence and immediately believed Defendant may have discarded an illegal substance in the backyard of a home in the Black Rock neighborhood. Det. Crawford asked Defendant several times to explain this behavior. The canine sniff occurred approximately eighteen to twenty minutes from the time Det. Crawford contacted Defendant.

The Court finds Det. Crawford's conduct was lawful. Defendant's reliance on *Rodriguez v. United States*, 575 U.S. 348 (2015) is misplaced. In *Rodriguez*, the officer stopped the defendant for driving on the shoulder. *Id.* at 348. The officer's investigation of the traffic stop ended with the officer issuing a warning for the traffic violation. *Id.* After completing his traffic investigation, the officer detained Rodriguez for seven minutes while waiting for a K-9 unit to arrive and conduct a canine sniff. *Id.* The Court held that police may not lawfully extend an otherwise-completed traffic stop for any amount of time to conduct a dog sniff, absent additional reasonable suspicion. *See id.* An officer must develop a lawful basis to conduct a canine sniff before the initial traffic stop ends. *See id.* at 352.

Here, Det. Crawford's investigation into the traffic violations and suspected drug activity occurred at the same time. Det. Crawford observed Defendant violate several state and/or local traffic laws, saw Defendant speed away and enter a residential neighborhood, and noticed Defendant was not in the vehicle when he saw Defendant walking near a fence and back towards the vehicle. These facts led Det. Crawford to continue his investigation because he reasonably suspected Defendant threw drugs over a fence or had drugs in the vehicle he was driving. Thus, Det. Crawford did not unlawfully extend the traffic stop in violation of the Fourth Amendment.

Because Det. Crawford timely developed reasonable suspicion of additional criminal activity and his conduct was lawful, he did not unlawfully extend or prolong the detention and did not violate Defendant's Fourth Amendment rights.

## CONCLUSION

For all the reasons stated above, the Court to **DENIES** the Amended Motion Suppress Evidence and Statements. *See ECF No. 38*.

It is so ORDERED.
SIGNED this 2nd day of July, 2025.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE